IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| JEROME H. JOHNS, et ux.     * <br>    Plaintiffs <br>                                                              * <br> and <br>                                                              * <br> FAIRBANKS CAPITAL CORPORATION <br>    Plaintiff/Intervenor                * <br> v.                                                                   * <br> MUTUAL BENEFIT INSURANCE COMPANY  * <br>    Defendant | Case No.: 03-CV-77 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Fairbanks Capital Corporation ("Fairbanks") on behalf of Goldman-Sachs Mortgage Company ("Goldman-Sachs"), by its attorneys, Michael T. Pate, and Covahey, Boozer, Devan & Dore, P.A., hereby files this Memorandum in support of its Motion for Summary Judgment:

**I. STATEMENT OF UNDISPUTED FACTS**

On October 11, 2000, Constance Johns executed a promissory note (the "Note") wherein she borrowed $131,250.00 from NationsCredit Financial Services Corporation, d/b/a EquiCredit ("EquiCredit"), which was secured by her residence (see *Exhibit 1*). She lived at the property known as 3145A Old Scarboro Road, Street, Maryland (the "Property"). On or about October 11, 2000, Constance and Jerome Johns ("the Johns") did execute a deed of trust (the "Deed of Trust") wherein they pledged the Property as collateral for the loan (see *Exhibit 2*). The Note was held by EquiCredit after execution (see *Exhibit 3*). The Note was

acquired on or about January 2002 by Goldman-Sachs (see *Exhibit 4*). The Note has been held by Goldman-Sachs since that date.[1]

Effective April 19, 2001, the Johns purchased a homeowner's insurance policy (the "Policy") through Defendant Mutual Benefit Insurance Company (see *Exhibit 5*).[2] By the terms of the Policy, EquiCredit Corp. of America was identified as a mortgagee and the effective date(s) of coverage were April 19, 2001–April 19, 2002. (Id., Declarations page.) On October 23, 2001 the Property was destroyed by fire.[3] On that date, the principal amount due under the Note was $130,751.25. See *Exhibit 6*. As of today's date, the Note is contractually due for the December 2001 payment. Id.

Johns and Goldman-Sachs did each make a claim under the Policy for their loss suffered October 23, 2001 (see *Exhibit 7*, Response to Request for Admission No. 16). The claim(s) for insurance coverage were denied by Mutual Benefit Insurance Company ("Mutual Benefit"). Accordingly, Plaintiff Johns did file their complaint in the Circuit Court for Harford County. The Johns complaint was removed on or about January 9, 2003 by Mutual Benefit, based upon diversity jurisdiction. On or about February 24, 2003, your Plaintiff did file a Motion to Intervene in these proceedings. By Order of Court dated April 15, 2003, the Motion to Intervene was granted. On May 27, 2003, your Plaintiff did file a Cross-Claim against the Johns based upon the failure to pay monies due under the Note.

---

[1] The servicing rights to *Exhibit 1* Note were held by Fairbanks Capital Corporation between the dates of January, 2002, through September, 2003. Since September 2003, the service rights to *Exhibit 1* Note have been held by GMAC Mortgage Corporation. See *Exhibit 4*.

[2] The authenticity of *Exhibit 5* policy is admitted by Mutual Benefit, pursuant to their Response to Request for Admission No. 21, which is attached hereto as *Exhibit 9*.

[3] See Amended Complaint, ¶9, and Answer to Fairbanks' Amended Complaint, ¶9.

During the discovery in the case, Plaintiffs designated Ronald W. Benfield, a certified General Appraiser to opine to the actual cash value of the dwelling on the Property. Mr. Benfield testified at deposition that the cash value of the dwelling on the Property was $60,000.00. See Exhibit 8, p. 46–52.

## II. STANDARD OF REVIEW

Summary Judgment is proper when, after viewing the pleadings, depositions, answers to interrogatories, admissions on file, motion and response in favor of the non-moving party, there is no genuine issue of material fact, and the party in whose favor judgment is entered is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); FED. R. CIV. P. 56(c).

The burden falls upon the party opposing the motion to show by detailed and precise evidentiary facts and not conclusions, that there is a genuine dispute as to a material fact which will present a genuine issue for trial. Celotex Corp. v Catrett, 477 U.S. 317, 324 (1986). "A mere scintilla of evidence is not enough to create a fact issue". Barwick v. Celotex Corp., 736 F.2d. 946, 958–959 (4th Cir. 1984) (internal citations omitted). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson at 249–250.

## III. ARGUMENT

### 1. Introduction

A review of the undisputed facts and applicable law reveals that Goldman-Sachs is the holder of the Note and entitled to mortgagee status. As the mortgagee under the Note,

Goldman-Sachs is entitled to benefit(s) due under the Policy. Goldman-Sachs is entitled to dwelling coverage to the extent of the amount of the property destroyed. Goldman-Sachs is also entitled to monies due from the Johns by the term(s) of the Note.

### 2. Goldman-Sachs as Holder of the Note

An application of Maryland Law will reveal the Note is a negotiable instrument. A further application reveals Goldman-Sachs is the legal holder of the Note and all rights which attach thereto.

To support a finding as a negotiable instrument, the Note must be:

1. An unconditional promise to pay a fixed amount of money with interest;

2. Payable to bearer or to order at the time it is issued or first comes into possession of a holder;

3. Payable on demand or at a definite time; and

4. Without other undertaking(s) or instruction(s) by the person promising or ordering payment.

MD. CODE ANN. COM. LAW I, §3-104.

The Note is an executed promissory note to make monthly payments to the note holder at a fixed interest charge. Comment 1 to §3-104 and §3-112(b) of the Commercial Law Article equate these terms to an unconditional promise to pay a sum certain.

The Note provides that the borrower is to make payments to the lender, and that the lender may transfer the Note. See *Exhibit 1*, ¶1. The Note also provides that the place of payments is to be directed by the Note holder. Id., ¶3. These terms equate to a determination that the Note is payable "to bearer or to order". See MD. CODE ANN. COM. LAW I, §3-109.

Monthly payments under the Note become due on the first of each month beginning December 1, 2000 and continuing thereafter until a final balloon payment on November 1, 2015. *Exhibit 1*, ¶3. Such a term satisfies the requirement of definiteness. See MD. CODE ANN. COM. LAW I, §3-108. The Note does not contain any other undertaking or instruction by the person promising or ordering payment which would prohibit negotiable treatment under §3-104; accordingly, the Note should be treated as a negotiable instrument.

A "holder" of an instrument is a person who has possession of a negotiable instrument payable to bearer[4] or to the specific holder. Id., §1-201(20). The indorsement(s) on the Note reveal Goldman-Sachs is the person entitled to enforce the Note and incorporated Deed of Trust.

### 3. Standard Mortgage Clause

The Policy included a mortgage clause.[5] The clause reads, in part, if a mortgagee is

---

[4] Payable to bearer includes an indorsement in blank. Id., §1–201(5).

[5] Mortgage Clause

> The word "mortgagee" includes trustee.
> If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of the same as the order of precedence of the mortgages.
> If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee;
> a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware.
> b. Pays any premium due under this policy on demand if you have neglected to pay the premium and
> c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
>
> If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or non-renewal takes effect.
>
> If we pay the mortgage for any loss and deny payment to you:

named in this policy, any loss payable . . . will be paid to the mortgagee and you, as interests appear . . . if we deny your claim, that denial will not apply to a valid claim of the mortgagee . . ." See *Exhibit 5*, ¶12, at p. 11 of 18. This clause effectuates independent insurance coverage for the mortgagee.

The clause is commonly referred to as a "standard" or "New York" mortgage clause. Clemons v. American Casualty Company, 841 F.Supp. 160, 162 (D. Md. 1993). This clause acts to create an independent contract between the mortgagee and insurer. George J. Couch, Couch On Insurance 3D, §65:32. The mortgagee's insurance contract cannot be voided by improper or negligent acts of the mortgagor. Id., and see also Clemons at 162. This mortgage clause outweighs and prevails over any provisions in a policy which conflict with the clause. Couch at §65:45.

Mutual Benefit contends no coverage exists for the mortgagee (in part) because of "misrepresentation, false statements, and fraudulent conduct" of the mortgagor in this case. See Interrogatory Response No. 8, attached hereto as *Exhibit 10*. Mutual Benefit relies upon the following Policy language in support of this position:

> Concealment or fraud. The entire policy will be void if, whether before or after a loss, an "Insured" has
> a. Intentionally concealed or misrepresented any material fact or circumstance;

---

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

See *Exhibit 5*, ¶12, at p. 11 of 18.

6

      b. Engaged in fraudulent conduct; or
      c. Made false statements,
         relating to this insurance.

Id., and see *Exhibit 5*, ¶2, at p. 17 of 18.

Any such acts (even if) taken by the mortgagor will not affect insurance coverage for the mortgagee as Mutual Benefit alleges. The mortgage clause prevails over this exclusion provision. See Couch at §65:45. The mortgagee under the Policy is accordingly due benefits under its independent contract of insurance with Mutual Benefit.

Mutual Benefit will argue that even if the mortgagee is due insurance coverage, Goldman-Sachs is not able to collect benefits because it is not the named mortgagee under the Policy.[6] See Interrogatory Response No. 8, attached hereto as *Exhibit 10*.[7] An analysis of this argument must focus upon the law of assignments.

### 4. Assignments

An assignment is defined as "(a) transfer or making over to another of the whole of any property, real or personal, in possession or in action, or any estate or right therein". Black's Law Dictionary, 62 (5th ed. 1983). An assignment provision (restriction) is in the Policy:

> **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

See *Exhibit 5*, ¶7, at p. 17 of 18.

---

[6] The mortgagees are identified as Champion Mortgage Co., Inc., and EquiCredit Corp. of America. The entry of Champion Mortgage Co., Inc., was apparently an underwriting error since the only mortgage upon the property during the effective dates of the policy was the loan issued by EquiCredit. See deposition transcript of Constance Johns, p. 64–65, attached hereto as *Exhibit 11.*

[7] See also Mutual Benefit's Motion to Dismiss, which was incorporated into Response No. 8.

Mutual Benefit argues this assignment restriction prohibits Goldman-Sachs' receipt of Policy benefits.[8]  The named mortgagee, EquiCredit, assigned a mortgage interest.  See *Exhibit 4*.  This transfer occurred after the date of loss in this case.  Id.  The non-assignability clause does not reach the assignment of a mortgage interest.  Even if the clause applied to the assignment of a mortgage interest, it would not affect a post-loss assignment.

         a. Assignment of Mortgage Interest Distinguished

EquiCredit Corporation of America, as mortgagee, held an insurable interest as of the date of the fire.  The underlying note and beneficial interest under the deed of trust were acquired by Goldman-Sachs subsequent to the fire.  This acquisition affected to transfer the rights EquiCredit Corporation of America held under the Policy to Goldman-Sachs.  The Policy itself was not assigned; instead, the Note and Deed of Trust were assigned.  The anti-assignment clause in the Policy is not controlling.

The Court of Appeals of North Carolina was called upon to review similar facts in Sprouse v. North River Ins. Co., 344 S.E. 2d 555 (N.C. App. 1986).  In that case, the homeowners had executed a note and pledged their home by way of a deed of trust.  An insurance policy was issued to the homeowner with a standard mortgage clause.  Id., at 557.  The note and deed of trust were assigned by the mortgagee without notice to the insurance company.  Id., at 558.  After fire damage, the assigned mortgagee notified the carrier which denied coverage and relied, in part, upon an anti-assignment provision in the policy.  Id., at 562.

---

[8] See Memorandum in Support of Motion to Dismiss and/or Motion to Strike, p. 4, filed May 2, 2003.

The North Carolina Court determined that the anti-assignment provision did not reach the assignment of the Note and did not prohibit recovery by the assigned mortgagee. The Court noted that:

> Courts of other jurisdictions have **uniformly** held that an assignment of the note and mortgage by the mortgagee named in the policy carries with it the rights that existed in the assignor with respect to the policy without the consent of the insurer.

Id., at 562 (emphasis added), citing Kintzel v. Wheatland Mut. Ins. Ass'n, 203 N.W.2d 799 (Iowa 1973); Central Union Bank v. New York Underwriters' Ins. Co., 52 F.2d 823 (4th Cir. 1931); Reinhardt v. Security Ins. Co., 312 Ill.App.1, 38 N.E.2d 310 (1941); Annot., 78 A.L.R. 499 (1932).

The appeals court said the policy was not assigned; instead, the note and deed of trust were assigned. Sprouse at 562. The court went on to state an assigned mortgagee's rights to policy proceeds will not be affected unless the mortgage clause contains express language which voids the clause if the mortgagee's name does not appear. Id.

The Fourth Circuit Court of Appeals examined a similar case in Central Union Bank v. New York Underwriters' Insurance Company, 52 F.2d 823 (4th Cir. 1931). A mortgage note secured the applicable property and the policy at issue contained a standard insurance clause. Id., at 824. The mortgage note was assigned prior to the loss without notice to the carrier. The Court heard insurance company arguments that loss payable under a policy should only be payable to a named mortgagee. Id. The Court distinguished policy assignments and mortgage assignments. Id., at 824–825. The Court stated that, absent a specific mortgage assignment restriction, such assignment continues coverage for the benefit of the assigned mortgagee. Id., at 825–826.

### b. Assignment after Loss Distinguished

Provisions in insurance policies which prohibit assignments apply (if at all) to assignments before loss. Such provisions are inapplicable to an assignment after loss. Couch, §35:7. After the fire of October 23, 2001, EquiCredit Corp. of America's interest in the proceeds was freely assignable as a chose in action. See Washington Fire Ins. Co. v. Kelley, 32 Md. 421, 437 (1870); Michigan Fire and Marine Ins. Co. v. Genie Kraft Corp., 195 F. Supp. 222, N.7 (D. Md. 1961).

### c. Clemons Distinguished

Clemons presents facts which Mutual Benefit may argue for the proposition no coverage exists for the mortgagee in this case. In that case, the mortgagee/seller, Eurice, sold improved property to buyer, Brumwell, in exchange for a mortgage upon the Property. Clemons at 161. Soon thereafter, Brumwell entered into a land installment contract with a third party, Clemons, wherein title would transfer to Clemons when payments under the contract had been completed. Id. Clemons subsequently purchased insurance upon the property. Id., at 162. By the terms of the policy, only Brumwell was listed as a mortgagee, but no reference to secured party Eurice was in the policy. Id. Subsequent to policy issuance, the property was destroyed by fire. Id.

The carrier denied Clemons' claim after concluding he made misrepresentation(s). The carrier denied coverage for mortgagee Eurice and suit followed. The case required the Court to interpret the application of a standard mortgage clause to an improperly identified mortgagee. Id.

Judge Motz analyzed the standard mortgage clause and its application to a "misnamed" mortgagee. The Judge noted the question of coverage for a misnamed mortgagee turns on the intent of the parties. Id., at 163. If a mortgagee was "misnamed", the Court said that the mortgagee bears the burden of proof that the insurance company intended coverage upon the misnamed mortgagee and/or any unnamed mortgagee who might be identified in the future. Id., at 162–163. The Court found that the mortgagee had not supported this contention and the standard mortgage clause offered it no protection. Id., at 163.

Central Union Bank offers special guidance to this Court to distinguish the case at bar from Clemons. In Central Union Bank, the mortgagee under the correct security instrument was identified in the insurance policy. An assigned (misnamed) mortgagee made a claim for benefits under the policy, and the carrier denied coverage. Id., at 824. The Circuit Court of Appeals for the Fourth Circuit stated that the standard mortgage clause[9] in the policy acted to effectuate coverage upon an assigned (misnamed) mortgagee since it is the **intent** of insurance carriers that whoever holds the mortgage is the mortgagee under the clause. Id., at 827, quoting Sun Fire Office v. Fraser, 5 Kan.App. 63 (1896).

### 5. Type of Coverage Applicable

The Policy provides dwelling coverage in the amount of $164,000.00. See *Exhibit 5*, Declaration page. Defendant avers in its interrogatory responses that the insured property was not a "dwelling"; instead, it was a mobile home and this was not accurately disclosed by Johns. See Interrogatory Response No. 12 and 13, which are

---

[9] The policy contained a standard mortgage clause which provided (in part) "loss or damage, if any, under this policy, shall be payable to Metropolitan Life Insurance Company, New York, N.Y., as mortgagee (or trustee), as interest may appear . . . Central Union Bank at 824.

attached hereto as *Exhibit 12.* A review of the materials in this case reveals that dwelling coverage exists on behalf of the Plaintiffs.

Dwelling is not *specifically* defined in the Policy. The Policy provides that "(w)e cover . . . the dwelling on the 'residence premises' shown in the Declarations . . ." *Exhibit 5*, p. 2 of 18. The residence premises is defined as "(t)he one family dwelling, other structures, and grounds . . . where you reside and which is shown as the 'residence premises' in the Declarations. Id., p. 1 of 18. The declarations provide that the residence premises are known as 3145A Old Scarboro Road, Street, Maryland. Id., Declaration page.

The Property was not a mobile home as of the date of loss. See *Exhibit 13*. Even if it was a mobile home initially, it lost its mobile character as it became a fixture of real property. Droney v. Droney, 102 Md.App. 672, 686 (1995). In any event (and most importantly), the Policy does not exclude a mobile home from dwelling treatment if it was the residence of the insured. Representation(s) by Johns at the time of Policy issuance, which go to the home's character or type, have no effect upon Goldman-Sachs' coverage.[10]

### 6. Amount of Coverage Due

The Policy imposes upon Mutual Benefit an obligation to pay Goldman-Sachs and the Johns "as interest appear". *Exhibit 5*, ¶12 at p. 11 of 18. This language obligates Mutual Benefit to pay Goldman-Sachs to the extent of the debt on the date of loss. Couch, §65:36. The debt includes unpaid principal, interest, payments of taxes and assessments advanced, and cost of any foreclosure action. Id. Such amount payable to Goldman-Sachs will not

---

[10] The mortgage clause in this case creates a separate relationship between the insurer and the mortgagee. Thus, any (alleged) misrepresentation by Johns in the home's character have no impact upon dwelling coverage to limits of $164,000.00 in favor of the mortgagee. See, *supra*, p. 4–6.

exceed the cash value of the loss in the fire.  5C <u>Appelman, Insurance Law and Practice</u>, §3405 at 315.

The outstanding principal balance on the date of loss was $130,751.25.  <u>See</u> <u>Exhibit 6.</u> However, the amount of loss to the dwelling on the Property (the cash value of the loss) was $60,000.00.  <u>See</u> <u>Exhibit 8</u> at p. 46–52.  By the terms of the Policy, Mutual Benefit must pay $60,000.00 to Goldman-Sachs.[11]

### 7. Cross-Claim

#### a. Breach of Contract

The Note obligates the debtor to make monthly payment(s) in the amount of $1,872.49. <u>Exhibit 1</u>, ¶3.  If the debtor fails to tender monthly payment(s) when due, she will be in default and the full amount of the debt will come due and owing.  <u>Id.</u>, ¶4.  Notice of this acceleration must be mailed to the debtor.  <u>Id.</u>

Ms. Johns has breached the term(s) of the Note in the case.  <u>See</u> <u>Exhibit 6</u>, ¶9. The Note holder has provided the notice of default and acceleration. <u>See</u> letter attached to <u>Exhibit 6</u>.  By the terms of the Note, Goldman-Sachs is entitled to judgment in the amount of $159,274.93.  <u>Id.</u>, ¶10.[12]

#### b. To Establish Equitable Lien

Goldman-Sachs has an equitable lien upon any and all insurance proceeds due and payable in this case.  Even if this Court determines Goldman-Sachs is not entitled to direct

---

[11] Mutual Benefit's payment of $60,000.00 will subrogate them to the extent of said payment by the terms of the Policy.  <u>See</u> <u>Exhibit 5</u> Policy, ¶12 at p. 11 of 18.  In the alternative, Mutual Benefit could pay the entire amount due under the mortgage debt and receive a full assignment and transfer of the mortgage and all securities held as collateral to the debt.  <u>Id.</u>

[12] This amount reflects a payoff through September 15, 2003.  The balance due increases with time.

payment of the Policy proceeds due the mortgagee, it is entitled to an equitable lien upon the proceeds of insurance for satisfaction of the mortgage debt.  See Clemons. at 164–165.  Accordingly summary judgment for Goldman-Sachs should be granted through the effect of an equitable lien upon the amount due under *Exhibit 1* Note.

### IV.  CONCLUSION

For the foregoing reasons, summary judgment should be granted for your Plaintiff in Count I and II of the Amended Complaint.  Summary Judgment should also be granted for each count in the Cross-Claim.

Respectfully submitted,

_____/s/_____
MICHAEL T. PATE, Bar ID #13846
Covahey, Boozer, Devan & Dore, P.A.
606 Baltimore Avenue, Suite 302
Towson, MD 21204
410-828-5525, Ext. 813
Attorney for Fairbanks Capital Corporation
  On Behalf of Goldman-Sachs Mortgage Corp.

kcr031023A