

1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

2

3   JEROME H. JOHNS, ET UX

4             Plaintiffs

5      vs.                    CASE NO.: JFM 03 CV 077

6   MUTUAL BENEFIT INSURANCE CO.

7             Defendant
    _____/

8

9          The deposition of CONSTANCE JOHNS was

10  held on Monday, October 13, 2003, commencing at

11  10:20 A.M., at the Law Offices of Brown, Brown &

12  Brown, 200 South Main Street, Bel Air, Maryland

13  21014, before Trisha G. Rarick, a Notary Public.

14

15  APPEARANCES:

16          DAVID E. CAREY, ESQUIRE
                On behalf of Plaintiffs

17
            MICHAEL T. PATE, ESQUIRE
18              On behalf of Fairbanks

19          WILLIAM C. PARLER, JR., ESQUIRE
                On behalf of Defendant

20

21  REPORTED BY:  Trisha G. Rarick



PLAINTIFF'S
EXHIBIT

11

2

1     STIPULATIONS
2     It is stipulated and agreed by and
3 between counsel for the respective parties that the
4 filing of this deposition with the Clerk of Court be
5 and the same is hereby waived.
6     - - - - - - -
7 Whereupon,
8     CONSTANCE JOHNS,
9 called as a witness, having been first duly sworn
10 to tell the truth, the whole truth, and nothing but the
11 truth, was examined and testified as follows:
12     MR. PARLER: Before we get started, all counsel are
13 present and there's a stipulation we have entered into
14 that the examination under oath transcripts of the
15 Johns family, Jerome, Constance, Jerrod and Tiffany
16 will be treated as depositions of plaintiffs for
17 purpose of use at trial. And with that, the
18 depositions today should be significantly abbreviated.
19 I'll try not to cover the same ground I covered
20 previously.
21     EXAMINATION BY MR. PARLER:

3

1     Q   Ms. Johns, my name is Bill Parler, and I
2 know I had previously taken your examination under
3 oath, and my goal today is not to go over the same
4 ground but perhaps ask some follow-up questions that
5 weren't broached before.
6     A   I understand.
7     Q   All right? What is your mother's present
8 name?
9     A   I believe she's back to Kinnamont. She was
10 remarried Chaldry but I believe she's since --
11    Q   Spell that.
12    A   C-H-A-L-D-R-Y, but I believe she's gone
13 back to Kinnamont. They have separated.
14    Q   How do you spell Kinnamont?
15    A   K-I-N-N-A-M-O-N-T.
16    Q   And where does she presently live?
17    A   She's living in Frederick, Maryland with my
18 cousin.
19    Q   And do you know the address?
20    A   No, I don't know the actual address.
21    Q   What's your cousin's name?

4

1     A   Amy and Dave -- it's -- I'll think of it,
2 I'm sorry. I don't know it right off the top of my
3 head.
4     Q   If you don't think of it, can you write it
5 down and send it to your attorney and ask for the --
6     A   Sure.
7     Q   -- names of Amy and Dave, as well as their
8 address?
9     A   Uh-huh.
10    Q   And as I understand, she had some things at
11 your house but was not living in your house at the time
12 of the fire?
13    A   That's correct.
14    Q   And her things are all on the inventory
15 listed as Doris' room?
16    A   That's correct.
17    Q   Your employer at the time of the fire was
18 Key Plastics?
19    A   That's correct.
20    Q   K-E-Y Plastics?
21    A   Correct.

5

1     Q   Are they still in business?
2     A   Yes, they are.
3     Q   What is their address?
4     A   Felton, Pennsylvania. Cherry Street, I
5 can't remember the exact number. It was in Cherry
6 Street, Pennsylvania -- Cherry Street in Felton,
7 Pennsylvania.
8     Q   How long did you work there?
9     A   Two years.
10    Q   And did you have to punch in on a time
11 clock when you got there in the morning?
12    A   No, I did not.
13    Q   Did you sign in?
14    A   No, I did not.
15    Q   Were you paid hourly?
16    A   Yes, I was. No, salary.
17    Q   Was there any manner of logging in at Key
18 Plastics when you got to work? Did you sign in on a
19 computer, did you sign in a sheet, did you punch
20 anything in?
21    A   No.

GORE BROTHERS Reporting & Video Co., Inc.
410-837-3027                                    Towson Reporting Company
                                                410-828-4148

62

1 to locate me. They had old information. They had not
2 gotten the new information that I had changed jobs. So
3 when they were contacted, they were trying to reach me
4 at Old Line Plastics.
5    Q    You think --
6    A    Someone there called Kim and said do you
7 know how to get ahold of Constance, and that's how that
8 happened.
9    Q    Okay. And do you know the names of people
10 at either the school or Old Line Plastics that were
11 involved in this line of communication?
12    A    I would not know.
13    Q    Do you recall what time you left work the
14 morning of the fire?
15    A    It was early, it was between five and 5:30.
16    Q    You left to come home?
17    A    To -- I'm sorry?
18    Q    Do you recall after you received word of
19 the fire what time you left Key Plastics?
20    A    Oh, I don't know. I would say it was
21 early, 8:30, nine. We had just gotten out of our

63

1 morning meeting.
2    Q    Where did you go when you left Key?
3    A    That day? Straight home.
4    Q    So, you didn't have to pick up Jerrod?
5    A    No, I did not.
6    Q    Your husband did that?
7    A    Yes, my husband did.
8    Q    Who picked up Tiffany?
9    A    Mr. Barth.
10        MR. PARLER: I don't think I have anymore
11 questions for you.
12        EXAMINATION BY MR. PATE:
13    Q    I just have a couple. Ms. Johns, my name
14 is Mike Pate. I represent Fairbanks on behalf of
15 Goldman Sachs. I'm going to show you a document which
16 was marked as Johns Exhibit 10 from September 30th.
17 That's a three-page document. If you could just take a
18 look at it. Is that your signature on that document,
19 ma'am?
20    A    Yes, it is.
21    Q    I think it's your initials on page 2 as

64

1 well.
2    A    Yes.
3    Q    Okay. That document, by its terms, I
4 believe, was signed by you on October the 11th of 2000
5 --
6    A    Correct.
7    Q    -- is that correct?
8    A    Correct.
9    Q    And it was by and between some -- I think
10 it was Nations Credit, doing business as Equicredit and
11 Constance Johns; is that correct?
12    A    Correct.
13    Q    And that was a loan which was in the, I
14 believe, it was $130,000; is that correct?
15    A    Correct.
16    Q    And at the same -- when that document was
17 executed, you had pledged the property and improvements
18 as collateral for that loan; is that correct?
19    A    Correct.
20    Q    And as of the date you executed that loan,
21 that was the only mortgage on your property; is that

65

1 correct?
2    A    Correct.
3    Q    And as of the date of the fire, in this
4 case, that was the only mortgage of your property; is
5 that correct?
6    A    Correct.
7        MR. PATE: I don't have any further
8 questions.
9        EXAMINATION BY MR. CAREY:
10    Q    Connie, just a couple of questions. Do you
11 recall having a problem in the home with a light that
12 went out frequently?
13    A    Yes.
14    Q    Can you describe what that was?
15    A    There was the bathroom -- excuse me, there
16 was the hallway light in my closet that -- walked
17 through closet, and then in my kitchen, every, oh,
18 gosh, few weeks, I was changing light bulbs in the
19 kitchen and the front porch light bulb was constantly
20 having to be changed, but I didn't reflect on this
21 until later. But the main issue I had was that closet

74

1 in about a week or so to go through it. Okay?
2        THE WITNESS: Okay. That's good.
3    (Deposition was concluded at 12:00 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

76

1 State of Maryland
2 City of Baltimore, to wit:
3        I, Trisha G. Rarick, a Notary Public
4 of the State of Maryland, Harford County, do hereby
5 certify that the within-named proceedings took place
6 before me at the time and place herein set out.
7        I further certify that the proceedings
8 were recorded stenographically by me and this
9 transcript is a true record of the proceedings.
10        I further certify that I am not of
11 counsel to any of the parties, nor an employee
12 of counsel, nor related to any of the parties,
13 nor in any way interested in the outcome of this
14 action.
15        As witnessed my hand and notarial seal
16 this 21st day of October, 2003.
17        _____
            Trisha G. Rarick
18            Notary Public
19
20 My commission expires:
21 July 1, 2007

75

1        CERTIFICATE OF DEPONENT
2
3
4        I hereby certify that I have read and
5 examined the foregoing transcript, and the same is a
6 true and accurate record of the testimony given by
7 me.
8
9        Any additions or corrections that I feel
10 are necessary, I will attach on a separate sheet of
11 paper to the original transcript.
12
13
14    _____
15        CONSTANCE JOHNS
16
17
18
19
20
21

77

1            INDEX
2    Deposition of Constance Johns
3        October 13, 2003
4
5 Examination by:                Page
6    Mr. Parler                3, 69
7    Mr. Pate                    63
8    Mr. Carey                   65
9
10 Exhibit No.                 Marked
11  1    TAX RETURN              44
12
13
14
15
16
17
18
19
20
21

GORE BROTHERS Reporting & Video Co., Inc.
410-837-3027

Towson Reporting Company
410-828-4148

Loan Number: 8050053258

# NOTE

October 11, 2000                       **TOWSON** , Maryland

                                                            City

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U. S. $____131,250.00____ (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is **NationsCredit Financial Services Corporation** __d/b/a/ EquiCredit__ . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder".

### 2. INTEREST

I will pay interest at a yearly rate of ____9.800____ %.

Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning __October 11, 2000__ and continuing until the full amount of principal has been paid.

Subject to applicable law, the Note Holder shall be entitled to interest at the yearly rate on any mortgage arrearage (amount past due) including, without limitation, circumstances in which a petition in bankruptcy, wage-earner, or other insolvency proceeding is filed designating me as debtor.

### 3. PAYMENTS

I will pay principal and interest by making ____180____ consecutive monthly payments with the first such installment in the amount of $____1,872.49____ due on the __1st__ day of __December, 2000__ , and __178__ monthly payments of $____1,132.46____ shall be due on the __1st__ day of each succeeding month, and I will make a final balloon payment of $____107,727.81____ on __November 1, 2015__ .

I will make payments in the amounts and on the dates promised until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on __November 1, 2015__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date". Time is of the essence of this Note.

I will make my monthly payments at P.O. Box 44132, Jacksonville, Florida 32231, or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of ____15____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5__ % of my overdue payment. I will pay this late charge only once on any late payment.

#### (B) Returned Check Charge

In the event that a check used to make any payment required by this Note is returned after second presentment unpaid by the payor bank for insufficient funds or credit, I agree to pay you a $__15.00__ fee for your additional costs incurred in processing such check. This charge will be required whether or not the returned check causes my payment to be late.

#### (C) Notice From Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

#### (D) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated __October 11, 2000__ , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

### 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Unless the box below is checked, I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.

X   I may make a full or partial prepayment, however, the Note Holder may charge me a prepayment charge during the first ____3____ years of the loan equivalent to ____3____ months interest at the rate set forth above on the amount of the principal balance prepaid. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

Form #495MD Balloon (11/99)

8050053258   JOHNS
Note

DEPOSITION
EXHIBIT 10
JOHNS
9-30-03

- 2 -

### 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers".

### 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address in the Security Instrument. . A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

### 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

### 10. LOAN CHARGES

I understand and believe that this lending transaction complies with Maryland usury, lending, general obligation, and real property laws of Maryland, unless preempted by Federal law, however, if any interest or other charges in connection with this lending transaction are ever determined to exceed the maximum amount permitted by law, I understand and agree that: (i) the amount of the interest or other charges payable by me pursuant to this lending transaction shall be reduced to the maximum amount permitted by law; and (ii) any excess amount previously collected from me in connection with this lending transaction which exceeded the maximum amount permitted by law, will be credited against the outstanding principal balance. If the outstanding principal balance has already been repaid, the excess amount paid will be refunded to me. All fees, charges, goods, things in action or any other sums or things of value (collectively, the "Additional Sums") paid or payable by me, whether pursuant to this Note, the Mortgage/Deed of Trust or any other document or instrument in any way pertaining to this lending transaction, or otherwise with respect to this lending transaction, which, under the laws of Maryland, may be deemed to be interest with respect to this lending transaction, shall, for the purpose of any laws of Maryland which may limit the maximum amount of interest to be charged with respect to this lending transaction, be payable by me as, and shall be deemed to be, additional interest, and for such purposes only, the interest rate of this lending transaction (as defined in this Note) shall be deemed to be increased by the Additional Sums.

I acknowledge that the principal includes closing costs listed on the Loan Closing Statement and/or the Itemization of Amount Financed (unless such fees are paid by me in cash or by check at closing) and deem such costs to be reasonable and specifically agree to pay them. I also acknowledge and understand that the loan origination fee, if any, and any other prepaid finance charges are fully earned at the time the loan is made and are not refundable.

### 11. CONFORMITY WITH LAWS

If any provision of this Note is found to be in violation of any law, rule, or regulation, that provision shall be deemed modified to comply with applicable law.

### 12. STATUTORY AUTHORITY

This Note evidences a loan made pursuant to Maryland Commercial Law Code Section 12-103(b) and Section 501(a)(1) of the Depository Institutions Deregulation and Monetary Control Act of 1980, Public Law 96-221.

### ACKNOWLEDGEMENT

The undersigned(s) agree(s) to the terms and provisions of this Note and any related security instrument and agree(s) that the lender mentioned above delivered a copy of this Note and any related security instrument to the undersigned(s) and anyone who executed the security instrument on the day this Note was signed by the undersigned(s).

_____    Constance Johns _____ (Seal)
                                    Borrower CONSTANCE JOHNS

WITHOUT RECOURSE                    _____ (Seal)
PAY TO THE ORDER OF                 Borrower
EquiCredit Corporation of America

Nations Credit Financial Services   WITHOUT RECOURSE              _____ (Seal)
Corporation d/b/a EquiCredit        PAY TO THE ORDER OF                (Sign Original Only)

By_____

Form #495MD Balloon (11/95) MINTON, VP    EquiCredit Corporation of America    Page 2 of 2

By_____

Note Allonge   #705005325 8

Loan #:

Customer Name: Johns, Constance

WITHOUT RECOURSE
PAY TO THE ORDER OF

EquiCredit Corporation of America
NationsCredit Financial Services
Corporation d/b/a EquiCredit

By _____
D. J. MINTON, VP

WITHOUT RECOURSE
PAY TO THE ORDER OF

EquiCredit Corporation of America

By _____
D. J. MINTON, VP